IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Joseph T. McQuatters, | ) | C/A No. 3:10-1375-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Town of Irmo Corporation; | ) | **REPORT AND RECOMMENDATION** |
| S. Jahue Moore, an individual; | ) | |
| Kathleen Loveless, an individual; | ) | |
| Joseph M. Epting, an individual; | ) | |
| Brian Buck, an individual; | ) | |
| J. Hendricks, an individual; | ) | |
| William P. Keesley, an individual; | ) | |
| Beth A. Carrigg, an individual; | ) | |
| Lisa Comer, an individual, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

This matter was removed from the Court of Common Pleas for Richland County, South Carolina. The plaintiff, Joseph T. McQuatters ("McQuatters"),[1] a self-represented litigant, filed this action alleging in part that the defendants violated his civil rights. Following removal, McQuatters, with leave of the court, amended his Complaint. (ECF No. 43.) This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and

---

[1] The caption of McQuatters's Amended Complaint refers to himself in all of the following ways: "Joseph T. McQuatters, Alleged Defendant, a legal fiction," "Joseph-Thomas: family McQuatters, Third Party Plaintiff," and "Joseph-Thomas: family McQuatters, Petitioner, Third Party Intervenor, Real Party in Interest under injury." (ECF No. 43 at 1.) The court amended the caption to properly reflect the interests of the parties in this matter and listed the plaintiff as Joseph T. McQuatters. McQuatters has continued to argue that this name is a "legal fiction" and has refused mail from both the court and the parties that refer to him as such. McQuatters further appears to have refused his mail based on allegations that "SC" is a "fiction location." The court observes that if McQuatters persists in such behavior, he does so at his own risk. See, e.g., Mora v. City of Gaithersburg, MD, 519 F.3d 216, 230 (4th Cir. 2008) ("Procedural due process is simply a guarantee of fair procedures . . . typically notice and an opportunity to be heard;" however a plaintiff "cannot plausibly claim that [] procedures are unfair" when he refuses to avail himself of them).

Recommendation on Defendant Keesley's motion for judgment on the pleadings (ECF No. 48); Defendants Carrigg and Comer's motion for judgment on the pleadings and/or for summary judgment (ECF No. 69); and the remaining defendants' motion for summary judgment (ECF No. 86). Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised McQuatters after each of the above-referenced motions was filed of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motions.[2] (ECF Nos. 49, 71, & 87.) McQuatters appears to have filed a general response to all the defendants' motions (ECF No. 92) and Defendants Keesley, Carrigg, and Comer replied (ECF Nos. 95, 98, & 105). Also pending before the court is McQuatters's motion for default judgment (ECF No. 74), to which Defendants Keesley, Carrigg, and Comer responded (ECF Nos. 78 & 85). Having carefully considered the parties' submissions and the record in this case, the court finds that the defendants' motions should be granted and McQuatters's motion should be denied.

## BACKGROUND

McQuatters's allegations in his Amended Complaint arise from a traffic stop on May 31, 2009 in the Town of Irmo, South Carolina initiated by Defendant Hendricks.[3] This stop resulted in a traffic citation. McQuatters asserts that he tried to challenge this citation by requesting a jury trial. He also filed an "Emergency Verified Petition for Injunctive Relief" in the Court of Common Pleas

---

[2] The court observes that McQuatters refused delivery of all of the Roseboro Orders and returned them to the court.

[3] In the individual defendants' supporting memoranda, they have identified their respective positions as follows: S. Jahue Moore, prosecuting attorney for the Town of Irmo; Kathleen Loveless, Clerk of Court for the Municipal Court for the Town of Irmo; Joseph M. Epting, Chief Municipal Judge; Brian Buck, Chief of Police for the Town of Irmo; J. Hendricks, Senior Patrol Officer for the Town of Irmo; William P. Keesley, state circuit judge; Beth A. Carrigg, Clerk of Court for Lexington County; and Lisa Comer, a staff member of the Lexington County Clerk's Office.



for Lexington County. McQuatters claims that Judge Keesley's law clerk sent an email referring to him as "Crazy Man," which he asserts was an ethical violation. He further alleges that Defendants Keesley and Loveless failed to timely notify him of the injunction hearing. He asserts that Judge Keesley dismissed his motion when McQuatters failed to appear for the hearing. A jury trial for the traffic citation was scheduled for April 21, 2010. McQuatters alleges that on April 20, 2010 he "removed" the action from municipal court to the Court of Common Pleas for Richland County and filed "compulsory counterclaims" against the defendants, including allegations of fraud, barratry, extortion, mail fraud, denial of due process, and a conspiracy to deprive McQuatters of his basic civil rights under S.C. Code Ann. § 16-5-10 and 42 U.S.C. §§ 1983, 1985, and 1986. On April 21, 2010, Judge Epting presided over McQuatters's jury trial in municipal court and McQuatters failed to appear. The jury trial commenced in McQuatters's absence with Defendant Moore proceeding as the prosecuting attorney for the Town of Irmo. McQuatters was found guilty. On May 26, 2010, McQuatters's action pending in the Court of Common Pleas for Richland County was removed to federal court. On August 31, 2010, McQuatters was granted leave to amend his Complaint to include claims of false arrest and violations under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq. ("RICO").

     McQuatters seeks reversal of the decision of the Town of Irmo Municipal Court; an injunction against the Town of Irmo to prevent officials from repeating the actions alleged above; disbarment of Defendants Keesley, Epting, and Moore; compensatory damages from Defendant Town of Irmo in the amount of twenty-five thousand dollars of "lawful money," which McQuatters defines as gold and silver; and punitive damages in the amount of one million dollars of lawful

money from each of the individual defendants and five million dollars of lawful money from Defendant Town of Irmo. McQuatters also requests leave to amend his complaint if it is deficient.[4]

**DISCUSSION**

**A.      McQuatters's Motion for Default Judgment**

As an initial matter, McQuatters has filed a motion for default judgment against the defendants apparently alleging that they failed to timely respond to his Amended Complaint. Federal Rule of Civil Procedure 55(a) clearly states that the court must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." The court also notes that, as a general matter, the law disfavors default judgments. Tazco, Inc. v. Dir., Office of Workers Comp. Program, U.S. Dep't of Labor, 895 F.2d 949, 950 (4th Cir. 1990). McQuatters alleges that his Amended Complaint was filed and served on July 14, 2010. However, McQuatters needed leave of the court to amend his complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. The court granted McQuatters leave to amend his complaint on August 31, 2010 and a review of the docket in this matter reveals that the defendants timely answered or otherwise pled to McQuatters's Amended Complaint. (See ECF Nos. 43, 45, 47, & 51.) Accordingly, McQuatters cannot show that the defendants have "failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Therefore, default judgment is not appropriate.

---

[4] McQuatters also requests that the court issue several "declaratory judgments." However, a review of these requests reveal that they are not in fact requests for a declaration of the rights or other legal relations of the parties, but rather simply seek a determination by the court that McQuatters should win his case.



B.     **Defendants' Motions**

1.     **Rule 12 Standards**

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings after the pleadings are closed.  A motion for judgment on the pleadings should be granted when viewing the facts in the light most favorable to the non-moving party, there remain no genuine issues of material fact, and the case can be decided as a matter of law.  Tollison v. B & J Machinery Co., 812 F. Supp. 618, 619 (D.S.C. 1993).  In considering a motion for judgment on the pleadings, the court applies the same standard as for motions made pursuant to Rule 12(b)(6). Independence News, Inc. v. City of Charlotte, 568 F.3d 148, 154 (4th Cir. 2009).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the plaintiff's complaint.  Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).  To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) (quoting Twombly, 550 U.S. at 570).  A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged.  Id.  When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint.  Erickson v. Pardus, 551 U.S. 89, 94 (2007).

2.     **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing



to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248. The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.

### 3. *Pro se* Pleadings

The federal court is charged with liberally construing a complaint filed by a self-represented litigant to allow the development of a potentially meritorious case. See, e.g., Cruz v. Beto, 405 U.S. 319 (1972). Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).



    **4.**        **Immunity**

As an initial matter, several of the defendants are entitled to immunity from many of the claims raised by McQuatters. Specifically, Defendants Epting and Keesley are entitled to judicial immunity; Defendants Loveless, Carrigg, and Comer are entitled to quasi-judicial immunity; and Defendant Moore is entitled to prosecutorial immunity.[5]

Judges have absolute immunity from a claim for damages arising out of their judicial actions. See Mireles v. Waco, 502 U.S. 9 (1991) (stating that judges are immune from civil suit for actions taken in their judicial capacity, unless "taken in the complete absence of all jurisdiction");[6] Stump v. Sparkman, 435 U.S. 349, 351-64 (1978) ("A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors."); Pressly v. Gregory, 831 F.2d 514, 517 (4th Cir. 1987) (dismissing a suit against two Virginia state magistrates); Chu v. Griffith, 771 F.2d 79, 81 (4th Cir. 1985) ("It has long been settled that a judge is absolutely immune from a claim for damages arising out of his judicial actions."); see

---

[5] Moreover, even if these defendants were not entitled to immunity, they would be entitled to dismissal or summary judgment for the reasons discussed in their memoranda. (See ECF No. 48-1 at 3-5, 7-9; ECF No. 69-1 at 5-8, 11-12; ECF No. 86-1 at 4-7, 13-17.)

[6] For example, "if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action." Stump v. Sparkman, 435 U.S. 349, 357, n.7 (1978). However, such a situation has been distinguished from a judge who is acting "in excess of jurisdiction." An example of the latter is "if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune." Id. McQuatters alleges that he "removed" the municipal traffic matter to the court of common pleas in Richland County thereby depriving Defendant Epting of jurisdiction over his traffic violation case. However, he has identified no proper procedure by which a traffic violation case from municipal court may be removed to the court of common pleas. Moreover, his allegation that no jurisdiction existed because he was only given a traffic ticket rather than a verified complaint is similarly without merit or support. Accordingly, McQuatters's allegations against Defendant Epting simply do not rise to the level of alleging that he acted in complete absence of jurisdiction.



also Faile v. S.C. Dept. of Juvenile Justice, 566 S.E.2d 536 at 540-41 (S.C. 2002) (recognizing judicial and quasi-judicial immunity under the South Carolina Tort Claims Act and South Carolina common law). Absolute immunity is "an immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). As stated above, Defendant Epting is a municipal judge and Defendant Keesley is a state circuit judge. McQuatters has failed to demonstrate that the actions by Defendants Epting or Keesley occurred "in the clear absence of all jurisdiction" or satisfied any recognized exception to the state's application of judicial immunity. Stump, 435 U.S. at 357; Faile, 566 S.E.2d at 540-41 (stating that "[j]udges and other officials are not entitled to judicial immunity if: (1) they did not have jurisdiction to act; (2) the act did not serve a judicial function; or (3) the suit is for prospective, injunctive relief only"). Accordingly, Defendants Epting and Keesley are absolutely immune from suit for monetary damages, even if their actions were done in error, maliciously, or in excess of their authority. See Stump, 435 U.S. 357 n.7; Sibley v. Lando, 437 F.3d 1067, 1070 (11th Cir. 2005).

Absolute quasi-judicial immunity extends to non-judicial officers "performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." Bush v. Rauch, 38 F.3d 842, 847 (6th Cir. 1994); see also Ashbrook v. Hoffman, 617 F.2d 474, 476 (7th Cir. 1980); Roland v. Phillips, 19 F.3d 552, 555 (11th Cir. 1994). This immunity extends to subordinate officials for "functions that are more administrative in character [that] have been undertaken pursuant to the [judge's] explicit direction." Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir. 1992). The doctrine of absolute quasi-judicial immunity has been adopted and made applicable to court support personnel because of " 'the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts.' " Id. at 601 (quoting

Scruggs v. Moellering, 870 F.2d 376, 377 (7th Cir. 1989)).  In light of the foregoing and for the same reasons that Defendants Epting and Keesley are entitled to immunity, absolute immunity also extends to protect Defendants Loveless, Carrigg, and Comer.

Finally, McQuatters's claims for monetary damages against Defendant Moore are barred by the doctrine of prosecutorial immunity.  His allegations against Moore appear to be limited to Moore's alleged failure to answer some of the letters McQuatters sent to him concerning McQuatters's traffic citation case and the fact that Moore acted as the prosecuting attorney in that matter.  Prosecutors are absolutely immune from liability for damages based on their "conduct 'in initiating and in presenting the State's case' " and their decisions about "whether and when to prosecute."  Springmen v. Williams, 122 F.3d 211, 212-13 (4th Cir. 1997) (quoting Imbler v. Pachtman, 424 U.S. 409, 431 (1976)); see also Buckley v. Fitzsimmons, 509 U.S. 259 (1993); Burns v. Reed, 500 U.S. 478 (1991).  McQuatters's allegations against Defendant Moore fall within these parameters; therefore, Defendant Moore is immune from suit for monetary damages.

### 5. Failure to State a Private Cause of Action

All of the defendants argue that there is no private right of action for claims of barratry, extortion, and mail fraud.  McQuatters has failed to refute this argument and the court has not found any case law or support permitting these claims to be advanced.  Therefore, all of the defendants are entitled to dismissal on these claims.

### 6. Failure to Comply with Rule 8(a)(2)

Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although the court must liberally construe a *pro se* complaint, the United States Supreme Court has recently made clear that, under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff in any civil action must do more than make mere conclusory



statements to state a claim. See <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009); <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). Rather, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. <u>Iqbal</u>, 129 S. Ct. at 1949; <u>Twombly</u>, 550 U.S. at 570. The reviewing court need only accept as true the complaint's *factual* allegations, not its legal conclusions. <u>Iqbal</u>, 129 S. Ct. at 1949; <u>Twombly</u>, 550 U.S. at 555.

> Expounding on its decision in <u>Twombly</u>, the United States Supreme Court stated in <u>Iqbal</u>:
>
> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

<u>Iqbal</u>, 129 S. Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555, 556, 557, 570) (citations omitted); <u>see also</u> <u>Bass v. Dupont</u>, 324 F.3d 761, 765 (4th Cir. 2003).

Several of the defendants argue that McQuatters's Amended Complaint fails to provide any factual basis to support his claims for fraud, conspiracy, and violations of § 1985, § 1986, and RICO.[7] The court has thoroughly reviewed McQuatters's Amended Complaint and his other filings and finds that there is absolutely no factual allegations to support any of these claims. These claims are conclusory and without support. Similarly, McQuatters has failed to state any plausible claim against the Town of Irmo.

---

[7] The court observes that although McQuatters's initial Complaint was filed in state court, after removal McQuatters sought and was granted leave to amend his Complaint.



Moreover, the court observes that the Amended Complaint fails to allege any personal involvement by Defendant Buck, Irmo Police Chief. The law is clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his individual capacity. Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). Moreover, a claim based upon the doctrine of respondeat superior does not give rise to a § 1983 claim. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[8] Iqbal, 129 S. Ct. at 1948.

Accordingly, Defendant Buck is entitled to summary judgment on all of McQuatters's claims and the remaining defendants are entitled to summary judgment on McQuatters's claims for fraud, conspiracy, and violations of § 1985, § 1986, and RICO.

### 7. False Imprisonment

McQuatters's Amended Complaint asserts a claim of false imprisonment. Specifically, McQuatters alleges the following:

> Petitioner and his wife were falsely arrested, without being shown a warrant and detained for a period of about fifteen (15) minutes, after which the man, Officer J. Hendricks, presented a fraudulent document, which appeared to be a Summons. No Verified Complaint has ever been received from Off. Hendricks, nor from the TOWN OF IRMO, which document is required to establish subject-matter jurisdiction in a

---

[8] As the Iqbal Court observed, because masters do not answer for the torts of their servants in § 1983 cases, "the term 'supervisory liability' is a misnomer." Iqbal, 129 S. Ct. at 1949. Indeed, the dissent in Iqbal opined that "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [] supervisory liability entirely." Id. at 1957 (Souter, J., dissenting). Moreover, even if the majority in Iqbal did not entirely dispense with the concept of liability of a supervisor in a § 1983 case, the instant Amended Complaint fails entirely to plead facts sufficient to go forward on such a theory based on Fourth Circuit precedent. See Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (outlining the requirements to hold a supervisor liable for constitutional injuries inflicted by their subordinates).



> municipal court. The above actions by Hendricks constitute false arrest and imprisonment, and barratry by both Hendricks, Buck, his superior, and the TOWN OF IRMO CORPORATION and its actors.

(Am. Compl., ECF No. 43 at 7.)  McQuatters also alleges that "[n]o arrest warrant has ever been shown to [McQuatters]," and that he "timely, on June 1, 2009, REFUSED AND RETURNED THE FRAUDULENT DOCUMENT (SUMMONS) to Off. Hendricks and the TOWN OF IRMO by U.S. Mail."  (Id.)

While McQuatters does not reference the Fourth Amendment in his Amended Complaint, he appears to assert a claim for false imprisonment.  To the extent that he is alleging that he was imprisoned or arrested for driving in excess of the posted speed limit in violation of his Fourth Amendment rights, the defendants are entitled to summary judgment on this claim.  To succeed on such a claim, McQuatters must demonstrate that the defendants imprisoned or arrested McQuatters without probable cause.  See Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002) (recognizing that a plaintiff alleging a § 1983 false arrest claim needs to show that the officer arrested him without probable cause to establish an unreasonable seizure under the Fourth Amendment); Rogers v. Pendleton, 249 F.3d 279, 294 (4th Cir. 2001) (stating that claims of false arrest and false imprisonment "are essentially claims alleging a seizure of the person in violation of the Fourth Amendment").  Thus, there is no § 1983 claim for false arrest unless the officer lacked probable cause.  See Street v. Surdyka, 492 F.2d 368, 372-73 (4th Cir. 1974).  "Probable cause to justify an arrest arises when 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.' " Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)).  It requires more than bare suspicion, but less than evidence necessary to convict.  Porterfield, 156 F.3d

PJG

at 569. Moreover, the determination of whether probable cause exists is reviewed under the totality of the circumstances. See Illinois v. Gates, 462 U.S. 213, 238 (1983); Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996).

Defendant Hendricks attests that on May 31, 2009, he visually estimated McQuatters to be traveling at 55 mph in a 45 mph speed zone on Highway 6 in the Town of Irmo and his radar confirmed that the McQuatters was traveling 57 mph. (Hendricks Aff. ¶¶ 2-3, ECF No. 86-2 at 2-3.) Hendricks states that he initiated a traffic stop and informed McQuatters of the charges against him for speeding. (Id. at ¶ 4.) Hendricks further attests that he issued McQuatters "a traffic citation on a Uniform Traffic Ticket form" and reduced the citation to 54 mph in a 45 mph speed zone. (Id.) McQuatters has failed to refute these facts. For example, his Amended Complaint merely states that he was traveling at a "safe rate of speed," (Am. Compl., ECF No. 43 at 6), and his general response opposing summary judgment does not address this issue. (See generally ECF No. 92.)

Case law establishes that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996). Further, " '[w]hen an officer observes a traffic offense—however minor—he has probable cause to stop the driver of the vehicle.' " United States v. Hassan El, 5 F.3d 726, 730 (4th Cir. 1993) (quoting United States v. Cummins, 920 F.2d 498, 500-01 (8th Cir. 1990)). Moreover, "the law has become well-established that during a routine traffic stop, an officer may request a driver's license and vehicle registration, run a computer check, and issue a citation" without violating the Fourth Amendment. United States v. Foreman, 369 F.3d 776, 781 (4th Cir. 2004).

Based on the foregoing, McQuatters has failed to refute the defendants' evidence that McQuatters was detained pursuant to a lawful traffic stop and was detained only long enough for the

officer to request the McQuatters's driver's license and registration, to run a computer check and to issue a citation.  McQuatters has failed to demonstrate that he was detained without probable cause or that his detention was in any way unlawful.  To the extent that McQuatters's allegations that he was falsely imprisoned rest on his assertion that he was presented with a fraudulent document (a summons) and that he never received a "verified complaint," which he apparently believes is required to establish subject matter jurisdiction in a municipal court, as noted above, he has provided no support for such an assertion under state law.

Accordingly, based on the record before the court and the totality of the circumstances, no reasonable jury could find that McQuatters's fifteen-minute detention was made without probable cause.  Moreover, even considering this claim as one arising under state law, the defendants are entitled to summary judgment, as McQuatters has failed to refute the defendants' evidence that McQuatters was not unlawfully restrained.  See Argoe v. Three Rivers Behavioral Health, L.L.C., 710 S.E.2d 67, 73 (S.C. 2011) (" 'In order to recover under a theory of false imprisonment, the complainant must establish (1) the defendant restrained him; (2) the restraint was intentional; and (3) the restraint was unlawful.' ") (quoting Jones by Robinson v. Winn-Dixie Greenville, Inc., 456 S.E.2d 429, 432 (S.C. Ct. App. 1995)).

**RECOMMENDATION**

For all the foregoing reasons, the court recommends that the defendants' motions for judgment on the pleadings and/or for summary judgment (ECF Nos. 48, 69, & 86) be granted and that McQuatters's motion for default judgment (ECF No. 74) be denied.

                                               _____
                                               Paige J. Gossett

July 27, 2011　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).